Filed 10/16/23  P. v. Bramscher CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM BRAMSCHER,<br><br>    Defendant and Appellant. | 2d Crim. No. B325075<br>(Super. Ct. No. 22PT-00629)<br>(San Luis Obispo County) |

William Bramscher appeals from the trial court's order declaring him an offender with a mental health disorder (OMHD) as described in Penal Code section 2962.[1]  He was diagnosed as suffering from a "delusional disorder."  He had two qualifying offenses for making criminal threats in violation of section 422,

---

[1] All statutory references are to the Penal Code.

subdivision (a). The trial court committed him to the Department of State Hospitals for treatment.

Appellant contends the trial court failed to advise him of his right to a jury trial and also failed to obtain a personal waiver of that right. In addition, he contends the evidence is insufficient to show he had "been in treatment for [his] severe mental health disorder for 90 days or more within the year prior to [his] parole release day." (§ 2962, subd. (d)(1).) We affirm.

<u>*Jury Waiver*</u>

*Facts*

On September 20, 2022, the following colloquy occurred between appellant's counsel and the trial court judge:

> "[COUNSEL:] "As I indicated, Your Honor, I had spoken to Mr. Bramscher last week, and he will be waiving jury trial, proceeding with a court trial. . . .
> "THE COURT: All right. Very well."

Appellant was present during the above colloquy and remained silent.

On October 11, 2022, the following colloquy occurred between a different judge and appellant:

> "THE COURT: . . . [A]s I understand it, Mr. Bramscher, you've already waived your right to a jury trial; is that right?
> "[APPELLANT]: Yes, sir. My recollection as well, Your Honor, is it's been waived for Court trial, that's correct.
> "THE COURT: Okay. And that's still what you want to do?
> "[APPELLANT] That is still what I want to do, Your Honor.
> "THE COURT: Very good."

2

*Appellant Was Advised of His Right to*
*a Jury Trial and Waived that Right*

"*People v. Blackburn* (2015) 61 Cal.4th 1113 . . . holds that a trial court must advise a defendant in an [OMHD] recommitment hearing of his or her right to a jury trial. . . . *Blackburn* means what it says and applies to all [OMHD] hearings, including original commitment hearings." (*People v. Blancett* (2017) 15 Cal.App.5th 1200, 1202.) A defendant in an OMHD proceeding "must be personally advised of the right to a jury trial, and . . . any waiver thereof must be personal, knowing, and voluntary." (*Id.* at p. 1204.)

Appellant claims he was not personally advised of his right to a jury trial. We disagree. On October 11, 2022, the trial court personally advised him of this right when it said, "[A]s I understand it, Mr. Bramscher, you've already waived your *right* to a jury trial; is that right?" (Italics added.)

Appellant claims he did not personally waive his right to a jury trial. We again disagree. Appellant personally waived this right when he told the court that he "still" wanted to waive it.

Appellant notes that the trial court did not follow the guidelines set forth by our Supreme Court in *People v. Sivongxxay* (2017) 3 Cal.5th 151, 169-170 (*Sivongxxay*). The court "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Id.* at p. 169.) The court "also recommend[ed] that the trial judge take additional steps as

appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id*. at pp. 169-170.)

Because the trial court did not follow the *Sivongxxay* guidelines, appellant argues, "Even if appellant's statement that he still did not want a jury trial on October 11[, 2022] is construed as a waiver, there is nothing in this record that establishes the statement was knowing and informed . . . ." But a trial court's failure to follow the *Sivongxxay* guidelines does not necessarily result in the absence of a valid jury waiver. The Supreme Court stated: "[W]e emphasize that our guidance is not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) "Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Id*. at p. 167.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. . . . Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id*. at p. 170.) "[U]ltimately, a "'defendant's rights are not protected only by adhering to a predetermined ritualistic form of making the

4

record.  Matters of reality, and not mere ritual, should be controlling.""" (*Ibid*.)

Considering the totality of the circumstances, we conclude that appellant voluntarily, knowingly, and intelligently waived his right to a jury trial.  Appellant was represented by counsel who "initiated the request for a court trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.)  It is reasonable to infer that counsel discussed the jury waiver with his client.  Counsel told the court that he "had spoken to [appellant] last week, and [appellant] will be waiving jury trial . . . ."  Appellant was present and did not dispute counsel's statement.

Moreover, appellant was well acquainted with jury trials. He acknowledges that "[t]he criminal conviction underlying the [OMHD] commitment arose from jury trial proceedings where he represented himself the entire time."  Appellant therefore knew what he was giving up when he waived his right to a jury trial. (See *Parke v. Raley* (1992) 506 U.S. 20, 37 ["We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights"].)

<u>*Alleged Insufficiency of the Evidence*</u>
*Substantial Evidence Supports the Finding that Appellant Received at Least 90 Days of Treatment for His Disorder*

One of the criteria for commitment as an OMHD is that "the prisoner has been in treatment for the severe mental health disorder for 90 days or more within the year prior to the prisoner's parole release day." (§ 2962, subd. (d)(1).)  Appellant's parole release day was July 19, 2022.  Appellant claims the evidence is insufficient to support the trial court's finding that he had received the required 90 days of treatment.

5

"The substantial evidence rule applies to appellate review of the sufficiency of the evidence in [OMHD] proceedings. [Citation.] We review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence—'evidence that is reasonable, credible, and of solid value'—such that a reasonable trier of fact could find beyond a reasonable doubt that [appellant received the required 90 days of treatment]." (*People v. Labelle* (2010) 190 Cal.App.4th 149, 151.)

Substantial evidence supports the trial court's finding that appellant received 90 days of treatment for his mental health disorder within the year prior to his parole release day of July 19, 2022. The trial court primarily relied on the testimony of Dr. Trayci Dahl and a mental health progress note prepared by Dr. Moeen Bhatti.

Dr. Dahl testified that on October 10, 2019, appellant was received at the California Department of Corrections and Rehabilitation (CDCR). "[H]e was placed into mental health within five days." From October 15, 2019 until the date of Dr. Dahl's evaluation of appellant in May 2022, he received treatment at "the triple-CMS level of care." This was the "least intensive level[]" of mental health treatment at CDCR. "He would go and have talk therapy, he would see a psychiatrist, not take medications, and he had groups he was assigned to." In June 2022 appellant was admitted to Atascadero State Hospital.

Appellant testified: "Within the first couple days at [CDCR], I was approached during questioning about mental health services and asked if I would like to speak to somebody about mental health and I said, 'yes.' So the triple-CMS program was patient-initiated by myself."

Appellant observes that, without a diagnosis of his mental disorder, his participation in the triple-CMS program was not enough to satisfy the 90-day treatment requirement. "The diagnosis determines the treatment the patient receives. [Citation.] . . . [T]he 'therapeutic process' begins with observation and the 'diagnosis to determine whether treatment is required.' [Citation.] [¶] In [OMHD] cases where the treating doctors have not diagnosed the severe mental disorder, there is insufficient evidence to support a finding that they treated the defendant for that disorder." (*People v. Bendovid* (2018) 30 Cal.App.5th 585, 591.) Appellant argues, "Here there was no evidence that a doctor [at CDCR] ever diagnosed delusional disorder and ordered treatment."

Substantial evidence shows that at CDCR appellant was diagnosed with a delusional disorder. It is reasonable to infer that he was treated for this disorder, but the treatment may have been hindered by his refusal to take psychotropic medication. A CDCR mental health progress note dated August 2, 2021, almost one year before his parole release day, said that appellant "is currently diagnosed provisionally with Delusional disorder, Erotomanic type." On March 29, 2022, almost four months before appellant's parole release day, Dr. Moeen Bhatti saw appellant and wrote: "I saw the patient few months ago . . . . *Patient is still delusional.* At the same time there are no safety concerns and he does not want to take any psychotropic meds at this point in time." (Italics added.) Dr. Bhatti continued: "I offered him an SSRI[2] but [he] did not want to take that. We agreed that if he

_____

[2] "Selective serotonin reuptake inhibitors (SSRIs) are the most commonly prescribed antidepressants" <https://www. mayoclinic.org/diseases-conditions/depression/in-depth/ssris/art-

changes his mind or the intensity and frequency of symptoms increase he would put a request to be seen by me." Dr. Kevin Perry testified: "While incarcerated [at CDCR], [appellant] consistently declined to take psychotropic medication. And then when he was admitted to the state hospital and a doctor prescribed such medicine for him, he refused it on the 21st, as well as the 22nd of June, this year [2022]."

The trial court stated: "I've spent quite a bit of time reviewing the records from CDCR, the treatment records . . . . There were many references in the progress notes referring to [appellant] continuing to have delusional themes . . . . [¶] So it does appear to the Court that [he was] being treated for a delusional disorder while at CDCR." The trial court's conclusion was reasonably based on the evidence.

<em>Disposition</em>

The order committing appellant for treatment to the Department of State Hospitals as an OMHD is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

20044825> [as of Aug. 24, 2023], archived at <https://perma.cc/SVS5-S5AN>.

8

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.